IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **ROBERT AUSTIN AND JESANIEL MARRERO,** individually and on behalf of all others similarly situated, *Plaintiffs*, v. **PUBLIC REPUTATION MANAGEMENT SERVICES, LLC D/B/A PR.BUSINESS,** a Florida limited liability company, *Defendant.* | Case No. **CLASS ACTION** **DEMAND FOR JURY TRIAL** |

<u>**CLASS ACTION COMPLAINT**</u>

**Preliminary Statement**

1. Plaintiffs Robert Austin and Jesaniel Marrero ("Plaintiffs") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of automated and prerecorded telephone calls, which, Congress found, were rightly regarded as in invasion of privacy. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. The Plaintiffs allege that Public Reputation Management Services, LLC d/b/a pr.business ("Pr.Business") made pre-recorded telemarketing calls to Plaintiffs and other putative class members without their consent.

3. The Plaintiff Jesaniel Marrero alleges that Pr.Business made multiple calls to his number to Plaintiff despite his phone number's presence on the National Do Not Call Registry.

4. The Plaintiffs and putative class members never consented to receive these calls. Because prerecorded voice marketing campaigns generally place calls to hundreds of thousands

or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal robocalls from or on behalf of the Defendant.

5. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff, Robert Austin, resides in Arkansas.

7. Plaintiff Jesaniel Marrero resides in Pennsylvania.

8. Defendant Public Reputation Management Services, LLC d/b/a pr.business is a limited liability company with its principal place of business in Florida within this district.

## Jurisdiction & Venue

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. The Court has personal jurisdiction over the Defendant because they engaged in telemarketing conduct from this District.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made from this District.

## TCPA Background

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

16. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

17. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

18. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

19. Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

20. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

21. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

22. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones in 2019 will be fraudulent. *Press Release, First Orion, Nearly 50%*

*of U.S. Mobile Traffic Will Be Scam Calls by 2019* (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html/.

23. Additionally, the TCPA outlaws unsolicited telemarketing (robocalls or otherwise) to phone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

24. Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(c)(5).

**Factual Allegations**

25. Pr.Business offers marketing services, with a focus on internet based presence.

26. In order to sell these services, Pr.Business relies on telemarketing.

27. One of the telemarketing strategies used by Defendant involves the use of automated dialers and prerecorded messages to solicit potential customers to use Pr.Business's services.

28. While such automated technology may save time and money for Pr.Business's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class.

Calls to The Plaintiff Austin

29. Plaintiff Austin is a "person" as defined by 47 U.S.C. § 153(39).

30. Mr. Austin's telephone number, (501) 960-XXXX, is registered to a cellular telephone service.

31. Pr.Business called Mr. Austin on his cellular telephone with a pre-recorded message on October 1, 2019, October 17, 2019 and October 25, 2019.

32. The purpose of the calls was to sell Pr.Business's services to Mr. Austin in exchange for a fee.

33. Confirming that Pr.Business made the call and was offering their services, Mr. Austin sent Pr.Business a letter.

34. Pr.Business confirmed that it made the calls.

35. The use of a pre-recorded message is evidence of that the calls were part of a campaign that made numerous phone calls in a short period of time.

36. Defendant's calls invaded Plaintiff's privacy and intruded upon his right to seclusion. The calls frustrated and upset Plaintiff by interrupting his daily life and wasting his time.

37. Defendant's calls intruded upon and occupied the capacity of Plaintiff's cellular phone and depleted the battery of Plaintiff's cellular phone. The calls temporarily seized and trespassed upon Plaintiff's use of his cellular phone, and caused him to divert attention away from other activities to address the calls.

38. Plaintiff did not consent to receive Defendant's calls prior to the receipt of the unsolicited conduct.

Calls to The Plaintiff Marrero

39. Plaintiff Marrero is a "person" as defined by 47 U.S.C. § 153(39).

40. Mr. Marrero's telephone number, (484) 213-XXXX, is registered to a cellular telephone service.

41. Pr.Business called Mr. Marrero on his cellular telephone with a pre-recorded message on January 9 and January 10, 2020.

42. Mr. Marrero's cellular telephone was registered on the National Do Not Call Registry on October 2, 2018.

43. Mr. Marrero's cellular telephone is his personal number used for housing purposes.

44. The purpose of the calls was to sell Pr.Business's services to Mr. Marrero in exchange for a fee.

45. The use of a pre-recorded message is evidence that the calls were part of a campaign that made numerous phone calls in a short period of time.

46. Defendant's calls invaded Plaintiff's privacy and intruded upon his right to seclusion. The calls frustrated and upset Plaintiff by interrupting his daily life and wasting his time.

47. Defendant's calls intruded upon and occupied the capacity of Plaintiff's cellular phone and depleted the battery of Plaintiff's cellular phone. The calls temporarily seized and trespassed upon Plaintiff's use of his cellular phone, and caused him to divert attention away from other activities to address the calls.

48. Plaintiff did not consent to receive Defendant's calls prior to the receipt of the unsolicited conduct.

**Class Action Allegations**

49. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

50. The Classes of persons Plaintiff propose to represent is tentatively defined as:

> Robocall Class:  All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular or residential landline telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.
>
> National Do Not Call Registry Class:  All persons in the United States to whom:  (a) Defendant and/or any person or entity acting on Defendant's behalf initiated more than one telephone solicitation call; (b) promoting Defendant's goods or services; (c) in a 12-month

period; (d) on their residential telephone line, including on a cellular telephone; (e) whose residential telephone number had been on the National Do-Not-Call registry for at least 31 days; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

51. Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. The Classes as defined above is identifiable through phone records and phone number databases.

53. The potential Classes members number at least in the thousands.  Individual joinder of these persons is impracticable.

54. The Plaintiff Austin is a member of the Robocall Class and the Plaintiff Marrero is a member of both classes.

55. There are questions of law and fact common to Plaintiffs and to the proposed Classes, including but not limited to the following:

    a.   Whether Defendant violated the TCPA by using automated calls to contact putative class members cellular telephones;

    b.   Whether Defendant violated the TCPA by making telemarketing calls to numbers on the National Do Not Call Registry;

    c.   Whether Defendant placed calls without obtaining the recipients' prior express invitation or permission for the call;

    d.   Whether the Plaintiffs and the class members are entitled to statutory damages because of Defendant's actions.

56. The Plaintiffs' claims are typical of the claims of class members.

57. The Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes, they will fairly and adequately protect the interests of the Classes, and counsel skilled and experienced in class actions, including TCPA class actions, represents them.

58. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

59. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

60. The Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the entire Classes' membership described above.

## LEGAL CLAIMS

### First Claim for Relief
### Violation of the TCPA's Automated Call provisions

61. The Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

62. Defendant's calls were made without the prior express consent, or the prior express written consent, of the called parties. 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(f)(8).

63. The Defendant violated the TCPA by (a) using a prerecorded voice to make calls to cellular and residential landline telephone numbers without the required consent, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(b).

64. The Defendant's violations were willful and/or knowing.

65. The TCPA also authorizes injunctive relief, and the Plaintiffs seek injunctive relief prohibiting Defendant from calling telephone numbers using an automatic telephone dialing system or a pre-recorded voice, absent an emergency circumstance.

**Second Claim for Relief**
**Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) –**
**National Do Not Call Registry**

66. Plaintiff Marrero realleges and incorporates by reference the allegations set forth in paragraphs 1-28 and 39-60.

67. The foregoing acts and omissions of Defendant, either directly or through the actions of others, constitute numerous and multiple violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiff and members of the National Do Not Call Registry Class who have registered their telephone numbers with the National Do-Not-Call Registry for at least 31 days.

68. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of 47 C.F.R. § 64.1200(c), Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of $500 in statutory damages for each and every call initiated to them, after registering their telephone numbers with the National Do Not Call Registry for at least 31 days, pursuant to 47 U.S.C. § 227(c)(5)(B).

69. Furthermore, Plaintiff requests that the Court use its discretion and treble the requested damages to $1,500 for each and every call initiated to them, after registering their telephone numbers with the National Do Not Call Registry for at least 31 days, pursuant to 47 U.S.C. § 227(c)(5)(B).

**Relief Sought**

WHEREFORE, for themselves and all class members, Plaintiffs requests the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers using an automatic telephone dialing system or a pre-recorded voice, or calling a number on the National Do Not Call Registry, absent an emergency circumstance;

B. Because of Defendant's violations of the TCPA, Plaintiffs seek for themselves and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiffs are proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes;

D. Such other relief as the Court deems just and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

Respectfully Submitted,

**Robert Austin** and **Jesaniel Marrero**, individually and on behalf of those similarly situated individuals

Dated: February 4, 2020

*/s/ Avi Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Counsel for Plaintiffs and the putative classes*