**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:20-80161-CIV-SMITH**

ROBERT AUSTIN and JESANIEL
MARRERO, individually and on behalf of
all others similarly situated,

        Plaintiffs,

   v.

PUBLIC REPUTATION MANAGEMENT
SERVICES, LLC d/b/a PR.BUSINESS, a
Florida limited liability company,

        Defendant.

_____/


**DEFENDANT PUBLIC REPUTATION MANAGEMENT SERVICES, LLC'S**
**MOTION TO TRANSFER, STAY, OR DISMISS ACTION**

## TABLE OF CONTENTS

I.    INTRODUCTION                                                                    1

II.   BACKGROUND                                                                      2

III.  ARGUMENT                                                                        5

A.    The Court Should Transfer This Action Under the First-Filed Rule               5

    1.    *Murphy* Is The First-Filed Case                                         6

    2.    The Parties Are Similar                                                  6

    3.    The Issues Are Similar                                                   7

    4.    There Is No Reason To Depart From The First-Filed Rule                   9

B.    Alternatively, the Court Should Stay This Case Under the First-Filed Rule
      Pending the Resolution of *Murphy*                                             9

C.    Alternatively, the Court Should Exercise Its Inherent Authority To Stay This
      Case Under the *Landis* Doctrine                                              10

    1.    *Murphy*                                                                10

    2.    *Barr v. American Association of Political Consultants, Inc.*           11

    3.    The FCC's Pending TCPA Proceeding                                       12

D.    The Court Should Dismiss or Stay This Action Under the Primary Jurisdiction
      Doctrine                                                                       16

IV.   CONCLUSION                                                                      19

AMERICAS 102496884

# TABLE OF AUTHORITIES

## FEDERAL CASES

Pages(s)

*ACA International v. FCC*,
   885 F.3d 687 (D.C. Cir. 2018) ................................................................................ 14

*Am. Ass'n of Political Consultants, Inc. v. FCC*,
   923 F.3d 159 (4th Cir. 2019) ................................................................................ 11

*Austin v. Public Reputation Management Services LLC*,
   No. 4:19-cv-00858-KGB (E.D. Ark.) ........................................................... passim

*AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*,
   608 F. Supp. 2d 1330 (S.D. Fla. 2009) .................................................................. 11

*Barnes v. CS Marketing LLC*,
   No. 19-24218-CIV-ALTONAGA/Goodman, 2020 U.S. Dist. LEXIS 1054
   (S.D. Fla. Jan. 2, 2020) ....................................................................................... 15

*Barr v. American Association of Political Consultants, Inc.*,
   No. 19-631 (U.S.) ....................................................................... 1, 10, 11, 12

*Beach TV Cable Co. v. Comcast of Fla./Ga., LLC*,
   808 F.3d 1284 (11th Cir. 2015) ............................................................................ 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 13

*Bondhus v. Henry Schein, Inc.*,
   No. 14-22982-Civ, 2015 U.S. Dist. LEXIS 56931 (S.D. Fla. Apr. 30, 2015) ......... 17

*Boyes v. Shell Oil Prods. Co.*,
   199 F.3d 1260 (11th Cir. 2000) ............................................................................ 16

*Buhr v. ADT, Inc.*,
   No. 9:18-cv-80605-RLR, Order Granting Motion to Stay [ECF No. 40]
   (S.D. Fla. July 25, 2018) ....................................................................................... 15

*Clinton v. Jones*,
   520 U.S. 681 (1997) .............................................................................................. 10

*Cole v. United Healthcare Ins. Co.*,
   No. 19-cv-21258-GAYLES, 2019 U.S. Dist. LEXIS 187358 (S.D. Fla.
   Oct. 28, 2019) .............................................................................................. 5, 7, 9

*Collegiate Licensing Co. v. Am. Casualty Co. of Reading, Pa.*,
   713 F.3d 71 (11th Cir. 2013) ............................................................................ 5, 8, 9

iii

*Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 United States
    Corp.*, No. 16-cv-80967-BLOOM/Valle, 2017 U.S. Dist. LEXIS 166033 (S.D.
    Fla. Oct. 6, 2017) ...........................................................................................................17

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
    685 F.2d 1284 (11th Cir. 1982) ....................................................................................10

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019), *petition for cert. filed*, *Facebook, Inc. v.
    Duguid*, No. 19-511 (U.S. Oct. 17, 2019) ....................................................................11

*Fontes v. Time Warner Cable, Inc.*,
    No. 2:14-CV-02060-CAS(CWx), 2018 U.S. Dist. LEXIS 227760 (C.D. Cal.
    Aug. 20, 2018) ...............................................................................................................12

*Gallion v. United States*,
    772 F. App'x 604 (9th Cir. 2019), *petition for cert. filed*, *Charter Communs.,
    Inc. v. Gallion*, No. 19-575 (U.S. Nov. 1, 2019) .........................................................11

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps. of Engineers*,
    No. CV-114-178, 2015 U.S. Dist. LEXIS 4421, 2015 WL 196018 (S.D. Ga.
    Jan. 14, 2015)...................................................................................................................8

*Glasgo v. Uber Technologies, Inc.*,
    No. 8:19-cv-97-T-33AAS, 2019 U.S. Dist. LEXIS 78005 (M.D. Fla. May 3, 2019)...............6

*Glasser v. Hilton Grand Vacations Co.*,
    948 F.3d 1301 (11th Cir. 2020) ........................................................................12, 14, 15

*Greenfield v. Yucatan Foods, L.P.*,
    18 F. Supp. 3d 1371 (S.D. Fla. 2014)......................................................................16, 18

*In re Checking Account Overdraft Litig.*,
    859 F. Supp. 2d 1313 (S.D. Fla. 2012).............................................................................5

*Jacobs v. United States*,
    No. 5:13cv278/MP/CJK, 2013 U.S. Dist. LEXIS 183064 (N.D. Fla. Sep. 30, 2013) ..........6, 9

*Jeffrey v. Capital One Bank (USA), N.A.*,
    No. CV416-218, 2016 U.S. Dist. LEXIS 141141 (S.D. Ga. Oct. 11, 2016).......................6, 9

*Laskaris v. Fifth Third Bank*,
    962 F. Supp. 2d 1297 (S.D. Fla. 2013)..........................................................................5, 9

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    768 F.3d 1110 (11th Cir. 2014) .....................................................................................16

iv

*Manuel v. Convergys Corp.*,
  430 F.3d 1132 (11th Cir. 2005) ........................................................................5

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018) ....................................................................14, 15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*,
  675 F.2d 1169 (11th Cir. 1982) .....................................................................5, 9

*Murphy v. PR.Business, LLC*,
  No. 2:19-cv-04909-GEKP (E.D. Pa.) ........................................................... passim

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
  545 U.S. 967 (2005) ...................................................................................16

*Parker v. Sirius XM Radio, Inc.*,
  No. 8:15-cv-1710-T-30EAJ, 2015 U.S. Dist. LEXIS 170624 (M.D. Fla. Dec.
  22, 2015) .............................................................................................9, 10

*Peterson v. Aaron's, Inc.*,
  No. 1:14-CV-1919-TWT, 2015 U.S. Dist. LEXIS 4733 (N.D. Ga. Jan. 15, 2015) .................10

*Pickens v. Am. Credit Acceptance, LLC*,
  Civil Action No. 2:14-00201-KD-N, 2014 U.S. Dist. LEXIS 131587 (S.D.
  Ala. Sep. 19, 2014) .....................................................................................18

*Reyes v. BCA Fin. Servs.*,
  No. 1:16-cv-24077-JG, Order Granting Motion to Stay Proceedings [ECF No.
  200] (S.D. Fla. July 10, 2019)...........................................................................15

*Rudolph & Me, Inc. v. Ornament Cent., LLC*,
  No. 8:11-cv-670-T-33EAJ, 2011 U.S. Dist. LEXIS 100430 (M.D. Fla. Sep. 7, 2011)..............6

*Scoma Chiropractic, P.A. v. Dental Equities, LLC*,
  No. 2:16-cv-41-FtM-99MRM, 2018 U.S. Dist. LEXIS 92736 (M.D. Fla. June
  1, 2018) ........................................................................10, 11, 12, 16, 17

*Secure v. Ultimate Fitness Group, LLC*,
  No. 1:18-cv-20483-FAM, Order Granting Motion to Stay [ECF No. 64]
  (S.D. Fla. Mar. 18, 2019) .................................................................................15

*Wijesinha v. Bluegreen Vacations Unlimited, Inc.*,
  No. 1:19-cv-20073-CMA, Order Administratively Closing Case [ECF No. 81]
  (S.D. Fla. July 15, 2019) ..................................................................................15

*Women's Choice Pharm., LLC v. Rook Pharm., Inc.*,
  No. 16-cv-62074-BLOOM/Valle, 2016 U.S. Dist. LEXIS 154820 (S.D. Fla.
  Nov. 7, 2016)...............................................................................................7

AMERICAS 102496884

*Yao v. Ulta Beauty Cosmetics, LLC,*
　　No. 18-22213-CIV-ALTONAGA/Goodman, 2018 U.S. Dist. LEXIS 219079
　　(S.D. Fla. Aug. 8, 2018) ....................................................................................7, 8, 9

## FEDERAL CONSTITUTION

United States Constitution First Amendment .........................................................11, 12

## FEDERAL STATUTES

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ............................. passim

47 U.S.C. § 227(a)(1).............................................................................................13, 14

47 U.S.C. § 227(b)(1)(A)(iii).................................................................................11, 12

47 U.S.C. § 227(b)(2) ...................................................................................................14

28 U.S.C. § 1404.............................................................................................................9

28 U.S.C. § 2342...........................................................................................................16

## FEDERAL REGULATIONS

47 C.F.R. § 64.1200(c)....................................................................................................8

## REGULATORY PROCEEDINGS

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection*
　　*Act of 1991*, 30 F.C.C. Rcd. 7961 (2015)..................................................................14

*Consumer & Governmental Affairs Bureau Seeks Comment on Interpretation of the*
　　*Telephone Consumer Protection Act in Light of the D.C. Circit's ACA International*
　　*Decision*, 83 Fed. Reg. 26284 (June 6, 2018).........................................................14

*Consumer & Governmental Affairs Bureau Seeks Further Comment on Interpretation of*
　　*the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v.*
　　*Crunch San Diego, LLC Decision*, 33 F.C.C. Rcd. 9429 (Oct. 3, 2018) .................14

## LOCAL RULES

Local Rule 7.1(a)(3)......................................................................................................19

Local Rule 7.1(b)(2)......................................................................................................19

AMERICAS 102496884

## I.     <u>INTRODUCTION</u>

This action, filed by plaintiffs Robert Austin and Jesaniel Marrero ("Plaintiffs"), is a copy-cat of a first-filed case against the same defendant, Public Reputation Management Services, LLC d/b/a PR.Business, LLC ("PR Business"), pending in the United States District Court for the Eastern District of Pennsylvania.  The first-filed case, *Murphy v. PR.Business, LLC*, No. 2:19-cv-04909-GEKP (E.D. Pa.) ("*Murphy*"), was filed on October 21, 2019, more than three months <u>before</u> Plaintiffs filed this action.  Although Plaintiffs have amended the complaint to try to avoid transfer, this action remains a copy-cat to *Murphy*.[1]

*Murphy* asserts the same claims as Plaintiffs' first amended complaint ("FAC"), seeks the same relief, and seeks to represent the same putative nationwide class of individuals who purportedly received non-emergency calls from PR Business to their cellular phones, using an artificial or prerecorded voice, without prior express consent, and in alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").  Indeed, *Murphy*'s putative class, if certified, would subsume Plaintiffs' individual claims, as well as their proposed "Robocall Class."  *Murphy*'s claims that PR Business called numbers on the national do-not-call registry ("DNC") also overlap with plaintiff Jesaniel Marrero's individual claim and proposed "National Do Not Call Registry Class."  PR Business already filed an answer, asserted affirmative defenses, and participated in an initial pretrial conference in *Murphy*, and the *Murphy* court issued a scheduling order, setting discovery, dispositive motion, and trial dates.

The first-filed rule dictates Plaintiffs' second-filed case, involving the same party and same issues, should be transferred to the United States District Court for the Eastern District of Pennsylvania or, alternatively, stayed pending the outcome of *Murphy*.

In the alternative, the Court should stay this action under the *Landis* doctrine pending the outcome of *Murphy*, the United States Supreme Court's decision on the constitutionality of the TCPA in *Barr v. American Association of Political Consultants, Inc.*, No. 19-631, and the Federal Communications Commission's ("FCC") forthcoming ruling interpreting the TCPA that will bind

---

[1] This case is also a copy-cat of another post-*Murphy* case that plaintiff Robert Austin filed and then, along with plaintiff Marrero, dismissed with prejudice against PR Business in the United States District Court for the Eastern District of Arkansas, *Austin v. Public Reputation Management Services LLC*, No. 4:19-cv-00858-KGB (E.D. Ark.) ("*Austin*").  Austin filed his first case on December 3, 2019, more than one-and-a-half months after *Murphy* was filed.  After PR Business moved to transfer or stay Austin's Arkansas action, Austin dismissed that action.  The caption of Austin's first notice of dismissal named Jesaniel Marrero as a plaintiff.  Plaintiffs then re-filed their case in this Court.

this Court.  In addition, the Court should dismiss or stay this action under the primary jurisdiction doctrine pending the FCC's decision.  Rather than require the parties and this Court to spend time and resources litigating potentially dispositive issues, given the field of play could materially change in light of these forthcoming decisions, dismissal or a stay is appropriate.

The factors under each of the *Landis* and primary jurisdiction doctrines favor a stay or dismissal, because: (1) Plaintiffs would <u>not</u> be prejudiced; (2) awaiting guidance from a controlling authority would streamline the resolution of crucial issues; (3) party and judicial resources would be conserved; and (4) in the case of the FCC proceeding, it would enable expertise and uniformity in the administration of a statute that subjects an activity to a comprehensive regulatory scheme.

For these reasons, as explained more fully below, PR Business respectfully requests the Court transfer, stay, or dismiss this action.

## II.   <u>BACKGROUND</u>

The *Murphy* putative class action was filed against PR Business on October 21, 2019 -- over three months <u>before</u> Plaintiffs filed this case.  *See* Def.'s Request for Judicial Notice ("RJN"), Ex. 1 ("*Murphy* Complaint").  *Murphy*, pending in the United States District Court for the Eastern District of Pennsylvania, asserts the same TCPA and DNC claims against PR Business as this case, and seeks to certify a proposed nationwide class of people who, among other allegations, received artificial or prerecorded voice calls from PR Business on their cell phones without prior express consent:

> All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

RJN, Ex. 1 (*Murphy* Compl., ¶ 49; *see id.*, ¶¶ 4-5, 14, 19, 33-45, 49, 54, 62).

Plaintiff Austin filed a substantially similar putative class action against PR Business in the United States District Court for the Eastern District of Arkansas on December 3, 2019, more than one-and-a-half months <u>after</u> *Murphy* was filed.  *See Austin v. Public Reputation Management Services LLC*, No. 4:19-cv-00858-KGB (E.D. Ark.) ("*Austin*").  Austin asserted the same TCPA and DNC claims against PR Business as *Murphy* and this case, and sought to certify

a proposed nationwide class of people who, among other allegations, received artificial or prerecorded voice calls from PR Business on their cell phones without prior express consent. RJN, Ex. 4 (*Austin* Compl., ¶¶ 2-3, 22-23, 27-36, 39, 41, 53-54). Many of the allegations in *Austin* and Plaintiffs' FAC here are copied verbatim from *Murphy*.

PR Business moved to transfer or stay *Austin* in January 2020 for the same reasons described in this motion. *See* RJN, Ex. 5 (*Austin* Docket Sheet). Austin never opposed that motion. Instead, he dismissed that case and re-filed it in this Court, adding Jesaniel Marrero as a plaintiff. *See* Complaint (Dkt. No. 1). Plaintiffs then filed a FAC containing substantially similar allegations as their original complaint. *See* FAC (Dkt. No. 14).

Like *Murphy*, Plaintiffs allege PR Business violated the TCPA by calling their cellular phones using an artificial or prerecorded voice without their prior express consent. FAC ¶¶ 2, 4, 27-48, 62-65. Plaintiffs also seek to represent a proposed nationwide class of people who received artificial or prerecorded voice calls from PR Business on their cell phones without prior express consent:

> All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more nonemergency telephone calls; (b) to their cellular or residential landline telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

*Id.* ¶ 50 ("Robocall Class"). This proposed class is subsumed by the proposed class in *Murphy*.[2]

Further, like *Murphy*, Marrero alleges PR Business called him while his number was on the national do-not-call registry. *See* FAC ¶¶ 41-44; RJN, Ex. 1 (*Murphy* Compl., ¶ 4). Marrero seeks to represent a proposed nationwide class who received such calls. FAC ¶¶ 50, 54.

Plaintiffs also seek the same relief as *Murphy* -- statutory damages up to $1,500 per violation for Plaintiffs and putative class members and injunctive relief prohibiting PR Business from violating the TCPA. *See* FAC ¶¶ 65, 68-69, & Relief Sought A-B; RJN, Ex. 1 (*Murphy* Compl., ¶¶ 4, 19-20, & Relief Sought F-G).

In addition, Plaintiffs allege identical questions of law and fact for the putative class as *Murphy* -- whether PR Business had prior express consent to call (FAC ¶¶ 55.c; *Murphy* Compl.

---

[2] Although Plaintiffs' proposed class definition includes calls made to "residential landline" numbers, that language should be disregarded because Plaintiffs do not allege they received calls to residential landline numbers. *See* FAC ¶¶ 30, 40. Therefore, Plaintiffs cannot serve as representatives for such a class.

¶ 54.b); whether PR Business can be liable (FAC ¶ 55.d; *Murphy* Compl. ¶ 54.d); whether PR Business acted willfully (FAC ¶ 64; *Murphy* Compl. ¶¶ 54.c, 65); and whether PR Business used an artificial or prerecorded voice (FAC ¶¶ 50, 63; *Murphy* Compl. ¶¶ 34, 55, 63).

Plaintiffs also identically allege, the "only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents."  FAC ¶ 58; RJN, Ex. 1 (*Murphy* Compl., ¶ 58).

Indeed, Plaintiffs copy many of their allegations directly from the *Murphy* complaint:

| ***Murphy* complaint** | **Plaintiffs' FAC** |
| --- | --- |
| ¶¶ 1, 18, 26 | ¶ 1 |
| ¶ 4 | ¶¶ 2-3, 42 |
| ¶¶ 5, 52 | ¶ 4 |
| ¶ 6 | ¶ 5 |
| ¶¶ 8-9 | ¶ 8 |
| ¶¶ 21-24 | ¶¶ 12-15 |
| ¶¶ 29-30 | ¶¶ 26-27 |
| ¶¶ 33, 35 | ¶¶ 31-32, 41, 44 |
| ¶¶ 39-40, 42 | ¶¶ 33-34 |
| ¶¶ 46-47 | ¶¶ 36-37, 46-47 |
| ¶¶ 44-45 | ¶¶ 38, 48 |
| ¶¶ 48-54 | ¶¶ 49-55 |
| ¶ 54.b | ¶ 55.c |
| ¶ 54.d | ¶ 55.d |
| ¶¶ 55-60 | ¶¶ 56-60 |
| ¶¶ 44-45 | ¶ 62 |
| ¶ 62 | ¶ 63 |
| ¶¶ 54.c, 65 | ¶ 64 |
| ¶ 64, Relief Sought F | ¶ 65, Relief Sought A |
| ¶¶ 14, 63, Relief Sought G | Relief Sought B |
| Relief Sought A-C | Relief Sought C |

PR Business answered the *Murphy* complaint and asserted affirmative defenses more than three months ago on December 20, 2019.  RJN, Ex. 2 (PR Business Answer).  PR Business also participated in an initial pretrial conference in *Murphy*, and the *Murphy* court issued a scheduling order, setting discovery, dispositive motion, and trial dates.  RJN, Ex. 3 (*Murphy* Docket Sheet).

Plaintiffs falsely assert they "are not aware of any litigation concerning this controversy already commenced by others."  FAC ¶ 60.  Austin has known about *Murphy* since at least January 27, 2020, when PR Business filed its motion to transfer or stay Austin's Arkansas action.  *See* RJN, Ex. 5 (*Austin* Docket Sheet).  Marrero has known about *Murphy* since at least February 28, 2020, when PR Business filed its first motion to transfer or stay this case.  (Dkt. No. 7).

### III.    <u>ARGUMENT</u>

#### A.    The Court Should Transfer This Action Under the First-Filed Rule

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).  This rule was developed because "[c]ompeting lawsuits involving the same parties and the same issues in separate jurisdictions waste judicial resources and can lead to conflicting results."  *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012). "In absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982).  If the rule applies, "the entire action should generally be decided by the court in which the action was first filed."  *In re Checking*, 859 F. Supp. 2d at 1324.

In addition to determining which court may decide the merits of substantially similar cases, the first-filed rule also "generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated."  *Collegiate Licensing Co. v. Am. Casualty Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013).  "Thus, once the court determines that the two suits likely involve substantial overlap, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed."  *In re Checking*, 859 F. Supp. 2d at 1325.  "[T]he proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed."  *Laskaris v. Fifth Third Bank*, 962 F. Supp. 2d 1297, 1298-99 (S.D. Fla. 2013) (alterations omitted).  In summary, when the first-filed rule applies, "[w]hether or not both cases should proceed independently is to be decided by the first-filed court."  *Id.* at 1299.

The first-filed rule applies when the two actions involve "overlapping issues and parties." *Manuel*, 430 F.3d at 1135.  "The cases need not be identical to find sufficient overlap."  *Cole v. United Healthcare Ins. Co.*, No. 19-cv-21258-GAYLES, 2019 U.S. Dist. LEXIS 187358, at *4-5 (S.D. Fla. Oct. 28, 2019).  "Rather, courts in this circuit analyzing the rule have primarily considered three factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues."  *Id.*

"The same analysis applies to parallel actions proposing nationwide classes."  *Id.*

"Courts in this district have routinely transferred putative class actions under the first-filed rule where the original action's proposed class—if certified—would include the second action's class." *Id.* at *5-6.  In addition, because courts compare proposed classes rather than named plaintiffs, the fact that named plaintiffs are not the same is inconsequential.  *Id.* at *6.

Courts in this circuit have routinely applied these principles to transfer putative TCPA class actions.  For example, in *Glasgo v. Uber Technologies, Inc.*, No. 8:19-cv-97-T-33AAS, 2019 U.S. Dist. LEXIS 78005, at *3-4 (M.D. Fla. May 3, 2019), the court transferred a second-filed putative TCPA class action because – like here – the two cases asserted the same TCPA claim against the same defendant, alleged the same conduct, involved overlapping legal and factual issues, and the first-filed action's putative class subsumed the second-filed action's proposed class.

In *Jeffrey v. Capital One Bank (USA), N.A.*, No. CV416-218, 2016 U.S. Dist. LEXIS 141141, at *1-3 (S.D. Ga. Oct. 11, 2016), similarly, the court transferred a second-filed putative TCPA class action because it proposed a substantially similar national class against the same defendant for violating the TCPA by calling individuals on their cellular phones without prior express consent.  *Id.*; *see also Rudolph & Me, Inc. v. Ornament Cent., LLC*, No. 8:11-cv-670-T-33EAJ, 2011 U.S. Dist. LEXIS 100430, at *8 (M.D. Fla. Sep. 7, 2011) (transferring case because first-filed factors were met and holding, "were the two actions to proceed separately in different venues, the overlap of issues and parties would create judicial waste and a potential for incompatible rulings").

For these same reasons, the first-filed rule applies here.  All three first-filed factors, as well as judicial economy, favor transferring this action to the Eastern District of Pennsylvania.

### 1.   *Murphy* Is The First-Filed Case

The first factor, the chronology of the two actions, supports transfer here.  *Murphy* was filed more than three months <u>before</u> Plaintiffs filed this action.  RJN, Ex. 1 (*Murphy* Compl.); *see* Compl. at 1 (Dkt. No. 1); *Jacobs v. United States*, No. 5:13cv278/MP/CJK, 2013 U.S. Dist. LEXIS 183064, at *4 (N.D. Fla. Sep. 30, 2013) (transferring case under the first-filed rule because a similar action was filed three months earlier involving the same set of facts and claims against the same defendants).

### 2.   The Parties Are Similar

The second factor is, "when actions analyzed under the first-filed rule involve putative

classes, what matters is whether the proposed class in the second action would be part of the proposed class, if certified, in the original action." *Cole*, 2019 U.S. Dist. LEXIS 187358, at *7. This factor also supports a transfer.

Murphy and Plaintiffs both seek to represent a proposed nationwide class who received artificial or prerecorded voice calls from PR Business on their cell phones, under the TCPA, during the four years before the date the complaints were filed. FAC ¶ 50; RJN, Ex. 1 (*Murphy* Compl., ¶ 49). Those four-year periods are almost identical because the complaints were filed only three months apart. Further, if certified, the *Murphy* proposed class would subsume Plaintiffs' proposed "Robocall Class." *See Cole*, 2019 U.S. Dist. LEXIS 187358, at *7.

*Murphy*'s putative class definition also overlaps with Plaintiffs' individual claims alleging PR Business violated the TCPA, which separately establishes the similarity-of-the-parties factor. *See* FAC ¶¶ 27-48, 62-65; RJN, Ex. 1 (*Murphy* Compl., ¶ 49); *Yao v. Ulta Beauty Cosmetics, LLC*, No. 18-22213-CIV-ALTONAGA/Goodman, 2018 U.S. Dist. LEXIS 219079, at *7-8 (S.D. Fla. Aug. 8, 2018) (holding the parties were similar because plaintiff's individual claim overlapped with putative class definition in the first-filed action). *Murphy*'s claims that PR Business called numbers on the national do-not-call registry also overlap with Marrero's individual claim and proposed "National Do Not Call Registry Class." *See* FAC ¶¶ 3, 42, 50, 54, 67-69, & Relief Sought A; RJN, Ex. 1 (*Murphy* Compl., ¶¶ 4, 19-20, & Relief Sought F-G).

Finally, a "precise identity of the parties is not required." *Cole*, 2019 U.S. Dist. LEXIS 187358, at *8. It is "unimportant that the [first-filed] Action alleges … additional defendants acted in concert with Defendant. Transfer would not prevent Plaintiff's claims from being litigated against Defendant." *Id.* Thus, the allegation in *Murphy* that a third-party acted in concert with PR Business is not relevant to the analysis.

The similarity of the parties supports a transfer.

### 3.     The Issues Are Similar

The third factor also supports transfer because the issues in *Murphy* and this action are similar. "The applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *Women's Choice Pharm., LLC v. Rook Pharm., Inc.*, No. 16-cv-62074-BLOOM/ Valle, 2016 U.S. Dist. LEXIS 154820, at *10-11 (S.D. Fla. Nov. 7, 2016).

*Murphy* and this case involve substantially similar putative classes, assert identical TCPA and DNC claims against the same defendant, and seek the same relief. Both cases allege the same conduct by PR Business, and involve the same issues of law and fact. *See* FAC ¶¶ 2-4, 27, 23-69, & Relief Sought A-B); RJN, Ex. 1 (*Murphy* Compl., ¶¶ 4, 19-20, 33-65, & Relief Sought F-G). The claims in both actions substantially overlap -- a central issue in both cases involves whether PR Business, or a third party acting on behalf of PR Business, initiated non-emergency calls to cell phones using an artificial or prerecorded voice without obtaining express prior consent, or called numbers registered on the DNC Registry. *Murphy* and this case also involve substantially overlapping legal and factual questions common to the putative nationwide classes. *See* FAC ¶¶ 50, 55, 63-64; RJN, Ex. 1 (*Murphy* Compl., ¶¶ 34, 54-55, 63-65).

As described above, Plaintiffs copy many of their allegations directly from the *Murphy* complaint. Indeed, courts have found the similarity of the issues weighs in favor of applying the first-to-file rule when a complaint "is copied nearly verbatim from the complaint filed in the [first-filed] action." *Yao*, 2018 U.S. Dist. LEXIS 219079, at *8-9; *see also GeorgiaCarry.Org, Inc. v. U.S. Army Corps. of Engineers*, No. CV-114-178, 2015 U.S. Dist. LEXIS 4421, 2015 WL 196018, at *2 (S.D. Ga. Jan. 14, 2015) (holding first-filed rule applies where the complaint in the later-filed action is "almost a carbon copy" of the first-filed case and the "issues clearly overlap" in both actions).

Finally, plaintiff Marrero's attempt to represent a putative "National Do Not Call Registry Class" does not defeat the similarity of the issues. "A first-filed analysis looks to the character of the suits and the parties to the suits, not simply to the similarity of issues without regard to the [plaintiff's] asserted rights as presented in the initial lawsuit." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 79 (11th Cir. 2013). In *Murphy*, the plaintiff claims PR Business called him "while his number was on the National Do Not Call Registry," in violation of 47 C.F.R. § 64.1200(c). RJN, Ex. 1 (*Murphy* Compl., ¶¶ 4, 19-20, & Relief Sought F-G). That is the same claim asserted in this case. *See* FAC ¶¶ 23-24, 67-69. The same questions of law and fact therefore exist in both cases. *See also Yao*, 2018 U.S. Dist. LEXIS 219079, at *6 (courts reject "attempts to evade the first-to-file rule by raising a single additional claim not present in the first filed action").

Because the issues in *Murphy* and this case are substantially similar, the third factor supports transfer under the first-filed rule.

### 4.     There Is No Reason To Depart From The First-Filed Rule

Because all three factors weigh in favor of transfer, the first-filed rule applies and this action should be transferred to the Eastern District of Pennsylvania.  Indeed, "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982).  The party opposing transfer has the burden of proving compelling circumstances that would warrant not transferring the action.  *Jeffrey*, 2016 U.S. Dist. LEXIS 141141, at *2.

Plaintiffs cannot meet their burden here.  Transfer is appropriate because, if this action proceeded here, the overlap of issues and parties would create judicial waste and a potential for incompatible rulings.  *See Jacobs*, 2013 U.S. Dist. LEXIS 183064, at *4-5 (transferring case under first-filed rule because "overlap between the pending cases necessarily raises concerns of judicial efficiency and disparate resolutions of similar cases").  Transferring this case to the Eastern District of Pennsylvania would also prevent PR Business from having to defend "against the same allegations in multiple jurisdictions, thus preserving both party and judicial resources." *Yao*, 2018 U.S. Dist. LEXIS 219079, at *11.

Plaintiffs cannot show any compelling circumstances to justify separately litigating this duplicative action here.  All three factors plus judicial economy weigh in favor of transfer, and there are no factors weighing against transfer.  Thus, "whether both cases should proceed independently is to be decided by the first-filed court" -- *i.e.*, the United States District Court for the Eastern District of Pennsylvania.  *Laskaris*, 962 F. Supp. 2d at 1299.[3]

### B.     Alternatively, the Court Should Stay This Case Under the First-Filed Rule Pending the Resolution of *Murphy*

In the alternative, the Court should stay this action under the first-filed rule pending the resolution of *Murphy*, or, at a minimum, until class certification is resolved in *Murphy*.

"District courts regularly stay later-filed class action lawsuits in favor of previously filed, substantially similar ones."  *Parker v. Sirius XM Radio, Inc.*, No. 8:15-cv-1710-T-30EAJ, 2015 U.S. Dist. LEXIS 170624, at *5 (M.D. Fla. Dec. 22, 2015).  For example, in *Parker*, the court

---

[3] In addition, "the 28 U.S.C. § 1404 factors do not justify an exception to the first-filed rule."  *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 79 (11th Cir. 2013).  Rather, "application of the first-to-file rule is dispositive," and "a motion to transfer pursuant to the first-to-file rule does not depend on the presence or absence of the § 1404(a) considerations."  *Cole*, 2019 U.S. Dist. LEXIS 187358, at *10-11 (quotation marks omitted).

granted a motion to stay a putative TCPA class action under the first-filed rule because "[b]oth this case and [the first-filed action] arise from substantially the same allegations that Defendant violated the TCPA by placing unauthorized calls to the cellular telephones of the named plaintiffs and the putative class members." Thus, the court held, "[t]he class certification issues involved in this case and [the first-filed action] are 'unquestionably intertwined.'" *Id.* at *5. Accordingly, the court stayed the case until class certification was resolved in the first-filed action. *Id.* at *6.

Similarly, the TCPA claims alleged in *Murphy* and this case arise from substantially similar allegations and the class certification issues are unquestionably intertwined. *See Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919-TWT, 2015 U.S. Dist. LEXIS 4733, at *4-10 (N.D. Ga. Jan. 15, 2015) (staying a later-filed class action under the first-filed rule because its issues overlapped with an earlier-filed class action). If the Court does not believe transfer is appropriate, it should nevertheless stay this action pending the resolution of *Murphy*.

### C.     Alternatively, the Court Should Exercise Its Inherent Authority To Stay This Case Under the *Landis* Doctrine

Alternatively, the Court should stay this case pending the resolution of several TCPA proceedings that will almost certainly produce binding authority on potentially dispositive issues here. These include the Supreme Court's decision on the constitutionality of the TCPA in *Barr v. American Association of Political Consultants, Inc.*, No. 19-631, and the FCC's forthcoming decision interpreting the TCPA that will bind this Court.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Indeed, the "inherent discretionary authority of the district court to stay litigation pending the outcome of related proceeding in another forum is not questioned." *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982). "In determining whether to grant a stay, courts generally examine three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41-FtM-99MRM, 2018 U.S. Dist. LEXIS 92736, at *4-5 (M.D. Fla. June 1, 2018).

#### 1.     *Murphy*

A stay of this action pending the resolution of *Murphy* would not prejudice Plaintiffs. As

discussed above, the *Murphy* putative class overlaps with and (if certified) would subsume Plaintiffs' individual TCPA claim and proposed class. A stay would also simplify the issues and reduce the burden of litigation on the parties and this Court. Given the substantial overlap of issues and parties, staying this action pending the resolution of *Murphy* would reduce judicial waste, avoid the potential for incompatible rulings, and prevent PR Business from having to defend against the same allegations in multiple jurisdictions, thus preserving both party and judicial resources. *See AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*, 608 F. Supp. 2d 1330, 1346 (S.D. Fla. 2009) (court may stay action to "promote judicial economy, reduce confusion and prejudice, and prevent possible inconsistent resolutions").

Further, a decision by the United States District Court for the Eastern District of Pennsylvania on *Murphy*'s class allegations could substantially affect the substance of Plaintiffs' motion for class certification in this action. *See Scoma*, 2018 U.S. Dist. LEXIS 92736, at *12.

### 2. *Barr v. American Association of Political Consultants, Inc.*

On January 10, 2020, the United States Supreme Court granted *certiorari* in *Barr v. American Association of Political Consultants*, No. 19-631, to consider whether the TCPA's restrictions violate the First Amendment as content-based regulations that do not withstand strict scrutiny and, if so, whether the unconstitutional restrictions could be severed from the remainder of the statute. *See Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019), *cert. granted*, *Barr v. Am. Ass'n of Political Consultants*, No. 19-631 (U.S. Jan. 10, 2020).

The issues before the Supreme Court in *Barr* are similar to those raised in two other petitions for writs of *certiorari* pending before it. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), *petition for cert. filed*, *Facebook, Inc. v. Duguid*, No. 19-511 (U.S. Oct. 17, 2019); and *Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019), *petition for cert. filed*, *Charter Communs., Inc. v. Gallion*, No. 19-575 (U.S. Nov. 1, 2019). There is a reasonable chance the Supreme Court will grant the other petitions and consolidate all three cases.

The Supreme Court's ruling on the issues raised in *Barr* (and potentially *Facebook* and *Charter*) will provide controlling guidance on one of PR Business's affirmative defenses in this action. As PR Business alleged in its affirmative defenses to the *Murphy* complaint, as applied, the TCPA violates the First Amendment of the United States Constitution. *See* RJN, Ex. 2, p. 10. Among other defenses, the TCPA's debt-collection exemption, 47 U.S.C. § 227(b)(1)(A)(iii), is a content-based restriction on speech that does not withstand strict scrutiny and is not severable

from the TCPA, rendering the entire statute unconstitutional.

Indeed, the Eleventh Circuit has acknowledged these dispositive First Amendment issues. In *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020), the Eleventh Circuit stated, "Would the First Amendment really allow Congress to punish every unsolicited call to a cell phone? That is a G too far. And how could it be consistent with the First Amendment to make exceptions for calls with a specific content, such as the exception for calls about government debts?" *Id.* at 1310 (citation omitted).

As a result, this Court should stay this action to await the Supreme Court's decision in *Barr*. A ruling by the Supreme Court that § 227(b)(1)(A)(iii) is unconstitutional and cannot be severed from the statute would render moot the parties' substantial expenditure of time, resources, and funds, as well as this Court's upcoming rulings.

It is also unclear what the Supreme Court will decide in *Barr* with respect to other TCPA issues. The Supreme Court's decision could create binding precedent on TCPA issues outside the First Amendment context. Given the impact the *Barr* decision will likely have on this case, proceeding with this action risks wasting the parties' and this Court's resources by continuing with discovery, dispositive motions, and briefing class certification.[4]

Due to the risk of wasting resources, the high degree of uncertainty regarding whether § 227(b)(1)(A)(iii) is valid under the First Amendment, and the potential the Supreme Court could decide other TCPA issues that may affect this case, a stay is appropriate.

### 3.     The FCC's Pending TCPA Proceeding

This Court should also stay this action pending the FCC's forthcoming ruling on the interpretation of the TCPA, which will bind this Court, and could affect key issues in this case. *See Scoma*, 2018 U.S. Dist. LEXIS 92736, at *12 (staying TCPA class action because FCC's decision could substantially affect the substance of plaintiff's motion for class certification). Like the Supreme Court's ruling in *Barr*, it is unclear how the FCC will interpret the

---

[4] *See, e.g.*, *Fontes v. Time Warner Cable Inc.*, No. 2:14-CV-02060-CAS(CWx), 2018 U.S. Dist. LEXIS 227760, at *7 (C.D. Cal. Aug. 20, 2018) (granting stay of putative TCPA class action because, "irrespective of how the [circuit court] rules on the TCPA's constitutionality, its decision will provide controlling guidance on one of defendant's affirmative defenses. Accordingly, the Court finds that this guidance … and the associated savings in judicial resources, militate in favor of granting a stay."); *see also id.* at *5 (further explaining a stay is warranted because "there is a 'legitimate possibility' that the [forthcoming] decision may resolve a dispositive issue in this case, and that a stay could save 'substantial efforts by the parties' and avoid 'the risk of wasting the resources of the Court").

requirements of the TCPA and the degree to which its ruling will affect the issues in this case.

Further, while Plaintiffs' FAC removed certain allegations from their original complaint claiming PR Business used an automatic telephone dialing system ("ATDS"), Plaintiffs have not disclaimed this as a basis for asserting a TCPA violation in this action.  To the contrary, Plaintiffs seek to enjoin PR Business from using an ATDS, and their allegations contemplate the use of an ATDS as a basis for their claims.  *See* FAC, Relief Sought A.

For example, Plaintiffs' first claim for relief is titled "Violation of the TCPA's Automated Call provisions," and they allege the "use of a pre-recorded message is evidence" PR Business "made numerous phone calls in a short period of time," (FAC ¶¶ 35, 45), and Plaintiffs seek "injunctive relief prohibiting Defendant from calling telephone numbers using an automatic telephone dialing system," (*id.*, Relief Sought A).

These allegations mirror those in *Murphy*, as well as Austin's allegations in the *Austin* case, both of which alleged TCPA claims based on the use of an ATDS.  *See* RJN, Ex. 2 (*Murphy* Compl. ¶ 38 ("the use of a pre-recorded message itself is indicative of the use of an ATDS")); RJN, Ex. 4 (*Austin* Compl. ¶¶ 34-35 (alleging "use of a pre-recorded message" is evidence PR Business "made numerous phone calls in a short period of time without human intervention"), *and* ¶¶ 26, 41, 53-54 (alleging PR Business used an ATDS to make calls to Austin and the putative class without their prior express consent)).

Such allegations provide plaintiffs a basis to assert TCPA violations based on the use of an ATDS.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint").

Thus, a gating issue here is whether PR Business's equipment allegedly used to call Plaintiffs is an ATDS.  PR Business maintains its equipment is <u>not</u> an ATDS under the TCPA. *See* Declaration of Benzion Aboud, ¶ 3 (Dkt. No. 7-1).  However, it is entirely unclear how to interpret what it means to use an ATDS under the TCPA.  The definition of "ATDS," among other TCPA issues, is currently being considered in a pending rulemaking proceeding before the FCC, which has primary authority to interpret and implement the rules governing the TCPA, and its ruling will bind this Court.

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers."  47 U.S.C. § 227(a)(1).  The FCC is authorized to prescribe rules and regulations to implement the requirements of the TCPA, including the interpretation of the TCPA's terms.  *See id.* § 227(b)(2).

Specifically, the FCC's orders regarding what constitutes an ATDS have changed over time and were addressed in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).  There, the D.C. Circuit discussed the FCC order, *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (2015).  *See id.* at 693.  The court found the FCC's interpretation of ATDS took the contradictory position that "the 'basic function' of an autodialer is to dial numbers without human intervention, but a device might still qualify as an autodialer even if it cannot dial numbers without human intervention."  *Id.* at 703.  Because the FCC order lacked "clarity about which functions qualify a device as an autodialer," the D.C. Circuit set aside the FCC's treatment of those issues.  *Id.*

The FCC has since twice sought public comment on how to interpret and apply the statutory definition of an ATDS.  *See* RJN, Exs. 6-7; FCC, *Consumer & Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, 83 Fed. Reg. 26284 (June 6, 2018); and FCC, *Consumer & Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision*, 33 F.C.C. Rcd. 9429 (Oct. 3, 2018).

The FCC issued a second public notice (RJN, Ex. 7) in response to the Ninth Circuit's expansive interpretation of ATDS in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).  There, the Ninth Circuit noted the TCPA's definition of ATDS "is ambiguous on its face," purportedly analyzed the TCPA's history and language, and concluded an "ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically."  *Id.* at 1051-52.  The FCC's second public notice suggested *Marks* conflicts with *ACA International* because its expansive interpretation of ATDS may subject ordinary calls from a smartphone to the TCPA's coverage.  *See* RJN, Ex. 7.

The Eleventh Circuit has shared these same concerns about the uncertainty of exactly what constitutes an autodialer under the TCPA.  *See Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1308-10 (11th Cir. 2020).  In *Glasser*, the Eleventh Circuit declined to follow *Marks*'

broad interpretation and explained:

> In the age of smartphones, it's hard to think of a phone that does not have the capacity to automatically dial telephone numbers stored in a list, giving § 227 an "eye-popping" sweep.  Suddenly an unsolicited call using voice activated software (think Siri, Cortana, Alexa) or an automatic "I'm driving" text message could be a violation worth $500.  Not everyone is a telemarketer, not even in America.  One would not expect to find this exponential expansion of coverage in a law targeting auto-dialers and randomly generated numbers—an expansion by the way that would moot much of the Fair Debt Collection Act's application to telephone debt collection efforts.

*Id.* at 1309 (internal citations omitted); *see id.* at 1306, 1311 (declining to follow *Marks*).

The FCC, pursuant to these public notices, is currently determining how an ATDS should be defined, among other TCPA issues, which could potentially affect the key aspects of this case. The FCC's public comment period has already closed in 2018, and a ruling from the FCC can reasonably be expected before the end of this year.  *See* RJN, Exs. 6-7.

It would be far more efficient to wait for the FCC's interpretation of the TCPA in its pending proceeding, rather than require the parties to conduct discovery and litigate whether PR Business's equipment is an autodialer under the current, uncertain definition, among other issues.

Judge Cecilia M. Altonaga recently invoked the *Landis* doctrine to stay another TCPA putative class action in this district because "the FCC ruling on the interpretation of the definition of an ATDS is expected to be forthcoming."  *Barnes v. CS Mktg. LLC*, No. 19-24218-CIV-ALTONAGA/Goodman, 2020 U.S. Dist. LEXIS 1054, at *8-9 (S.D. Fla. Jan. 2, 2020). Judge Altonaga reasoned, if the FCC decides an ATDS "must (a) use a random or sequential number to store or produce numbers and dial those numbers without human intervention, or (b) that predictive dialers do not meet the statutory ATDS definition, that decision will bind the court and may require dismissal or summary judgment in Defendants' favor."  *Id.* at *8.[5]

For the same reasons, and given the impact the FCC decision is likely to have on this case, this Court should similarly stay this action.

---

[5] Numerous other judges in this district have stayed TCPA actions pending the FCC's forthcoming ruling. *See Reyes v. BCA Fin. Servs.*, No. 1:16-cv-24077-JG, Order Granting Motion to Stay Proceedings [ECF No. 200] (S.D. Fla. July 10, 2019) (Goodman, J.); *Secure v. Ultimate Fitness Group, LLC*, No. 1:18-cv-20483-FAM, Order Granting Motion to Stay [ECF No. 64] (S.D. Fla. Mar. 18, 2019) (Moreno, J.); *Buhr v. ADT, Inc.*, No. 9:18-cv-80605-RLR, Order Granting Motion to Stay [ECF No. 40] (S.D. Fla. July 25, 2018) (Rosenberg, J.); *see also Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 1:19-cv-20073-CMA, Order Administratively Closing Case [ECF No. 81] (S.D. Fla. July 15, 2019) (Altonaga, J.).

**D.**      **The Court Should Dismiss or Stay This Action Under the Primary Jurisdiction Doctrine**

"Under the primary jurisdiction doctrine, a court of competent jurisdiction may stay an action pending resolution of an issue that falls within the special competence of an administrative agency." *Beach TV Cable Co. v. Comcast of Fla./Ga., LLC*, 808 F.3d 1284, 1288 (11th Cir. 2015). "The main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (quotation marks omitted). "When the doctrine of primary jurisdiction applies, the court has discretion either to stay the case and retain jurisdiction or to dismiss the case without prejudice if the Parties would not be unfairly disadvantaged." *Greenfield v. Yucatan Foods, L.P.*, 18 F. Supp. 3d 1371, 1377 (S.D. Fla. 2014).

"Courts consider four factors when applying the doctrine of primary jurisdiction: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Id.* at 1376. All four factors are met here, and no party would be unfairly disadvantaged if the Court dismissed or stayed this action.

As discussed above, the FCC is authorized to prescribe rules and regulations to implement the requirements of the TCPA, including the interpretation of the TCPA's terms. As the agency responsible for implementing the TCPA, the FCC is currently determining TCPA issues that could materially affect how the parties litigate, and this Court decides, the issues in this case, including what constitutes an autodialer and other key TCPA issues.

Notably, the FCC's ruling will bind this Court. The Hobbs Act, 28 U.S.C. § 2342, prevents courts other than the court of appeals directly reviewing an FCC order, from collaterally reviewing the FCC's determination of an issue in an FCC order, even when that issue arises in a lawsuit between private parties. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120-21 (11th Cir. 2014); *see also Scoma*, 2018 U.S. Dist. LEXIS 92736, at *9-10 ("This court, like all district courts, lacks jurisdiction under the Hobbs Act to consider the argument that the FCC incorrectly interpreted the TCPA."). In addition, the FCC's reasonable interpretation of the TCPA will govern Plaintiffs' claims here. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005).

Courts in this circuit have regularly stayed TCPA actions pending FCC guidance that would affect the issues in a case.  For example, in *Scoma Chiropractic*, the court stayed a putative TCPA class action under the primary jurisdiction doctrine pending the FCC's interpretation of a statutory question that would have, at a minimum, affected the class certification issues raised in that case.  2018 U.S. Dist. LEXIS 92736, at *8-10.  The court held "[d]eferring to the FCC would advance the basic purpose of the doctrine because the specialized knowledge of the FCC is needed to answer the questions before the Court and deferral is necessary for a uniform interpretation of the statutory questions at issue."  *Id.* at *8-9.  It further reasoned as "to uniformity of administration, if this case proceeds, there is a risk that the Court could reach a determination that is inconsistent with the FCC's ultimate decision."  *Id.* at *9.  Thus, the *Scoma* court concluded, "a stay will simplify and streamline the issues raised in this case and reduce the burden of litigation on the parties and on the Court."  *Id.* at *12.  "Any delay plaintiffs will experience in this case is outweighed by the potential prejudice that could inure to [defendant] and its liability to class members that might very well not fit within the proposed class following the FCC's decision."  *Id.*

Similarly, in *Bondhus v. Henry Schein, Inc.*, No. 14-22982-Civ, 2015 U.S. Dist. LEXIS 56931, at *9 (S.D. Fla. Apr. 30, 2015), the court stayed a putative TCPA class action under the primary jurisdiction doctrine because the FCC's pending "decision on the issue of waiver will affect the scope of the issues in this case, including the availability of certain defenses, the scope of the class, and potentially the propriety of a class action."

Likewise, in *Comprehensive Health Care Systems of the Palm Beaches, Inc. v. M3 United States Corp.*, No. 16-cv-80967-BLOOM/Valle, 2017 U.S. Dist. LEXIS 166033, at *3-8 (S.D. Fla. Oct. 6, 2017), the court stayed a putative TCPA class action because the court would inevitably benefit from the FCC's guidance; the FCC's ruling would affect a central and potentially dispositive issue in the case; the FCC had already opened a notice-and-comment rulemaking proceeding and received public comment; Congress vested the FCC with the authority to issue rules clarifying and interpreting the TCPA; and "the need for uniformity in [the] administration of the TCPA."  2017 U.S. Dist. LEXIS 166033, at *3-8 (citations omitted).  The court concluded the "potential effect on this case and the dearth of definitive interpretation of the TCPA provisions applicable here counsel against continued litigation in this case until the threshold issue … can be addressed by the FCC."  *Id.* at *8.

In *Pickens v. American Credit Acceptance, LLC*, Civil Action No. 2:14-00201-KD-N, 2014 U.S. Dist. LEXIS 131587, at *3-8 (S.D. Ala. Sep. 19, 2014), the court stayed a TCPA action under the primary jurisdiction doctrine pending the FCC's forthcoming guidance on the terms "capacity" and "called party" under the TCPA, which affected whether defendant used an "artificial or prerecorded voice" and whether the consent exception applied to the TCPA claim. The court reasoned the "implementation and interpretation of the TCPA have been placed squarely within the jurisdiction of the FCC," and even if the court "did have the expertise necessary to decide these questions, piecemeal adjudication of what constitutes 'consent' would lead to uneven application of the TCPA.  Rather than precipitate the inconsistency that might be created by 'judicial interference,' this court can foster uniformity through 'preliminary resort' to the proper administrative body."  *Id.* at *5-7 (citations omitted).

Similarly, here, agency expertise and uniformity weigh in favor of deferring to the FCC. Continuing with this action would potentially waste resources by proceeding with discovery and dispositive motions based on authority that may be undermined by the FCC's forthcoming decision.  Similarly, the Court risks wasting resources by relying on and applying incorrect law in ruling on class certification and dispositive motions.  The key issues this Court will need to resolve are committed to the special expertise of the FCC, and it is already considering them. Thus, the FCC's forthcoming decision would simplify this case, provide helpful guidance to this Court in interpreting the TCPA, and promote uniform application of the law.  *See Greenfield*, 18 F. Supp. 3d at 1376 (staying case under primary jurisdiction doctrine because the "need for consistent guidance is underscored by the increasing volume of this type of litigation and the concomitant potential for inconsistent judicial rulings").

Plaintiffs would also not be prejudiced by a dismissal or stay because this case is in the pleading stage.  The cost imposed on the parties is minimal because a substantially identical putative TCPA class action is already pending in *Murphy* in the Eastern District of Pennsylvania, and Plaintiffs would be members of the *Murphy* nationwide class if certified.

Each of the primary jurisdiction factors is met in this case, and dismissing or staying this action will not prejudice Plaintiffs.  Given the need to resolve an issue Congress placed within the jurisdiction of a federal agency (the FCC) pursuant to a statute (the TCPA), which subjects an industry or activity to a comprehensive regulatory scheme requiring expertise and uniformity in administration, as well as in the interests of preserving judicial and party resources that could

otherwise be wasted by proceeding with this case -- and in light of the pending *Murphy* putative class action, which substantially overlaps with the parties and issues in this case -- PR Business requests the Court dismiss or, in the alternative, stay this case under the primary jurisdiction doctrine pending the FCC's forthcoming ruling.

**IV.    CONCLUSION**

For the foregoing reasons, PR Business respectfully requests the Court transfer this action to the Eastern District of Pennsylvania.  In the alternative, PR Business requests the Court stay this action pending the resolutions of *Murphy*, *Barr*, and the FCC's pending TCPA proceeding. Alternatively, PR Business requests the Court dismiss or stay this action under the primary jurisdiction doctrine.

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for PR Business has conferred with counsel for Plaintiffs in an effort to resolve the issues raised in this motion.  The parties were not able to reach an agreement.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), PR Business respectfully requests oral argument on its motion to transfer, stay, or dismiss this action.  PR Business estimates ten (10) minutes will be required for argument.  A hearing on the issues underlying the motion will provide this Court with additional context on the *Murphy* action and an opportunity to discuss why the first-filed rule warrants the dismissal or transfer of this action to the Eastern District of Pennsylvania.  In addition, a hearing will provide an opportunity to address the Court's questions on how the first-filed rule, the Court's inherent authority, and the primary jurisdiction doctrine warrant a stay or dismissal under the specific circumstances of this case.  These issues involve controlling questions of law that must be resolved before the case can move forward, and whose resolution will materially advance the ultimate termination of the litigation.  A hearing will enable the parties to sharpen the issues, clarify their positions, and address any unanswered questions, all of which will assist this Court in efficiently resolving the motion.

Dated:  April 3, 2020                                    Respectfully submitted,

                                     _/s/ Kenneth M. Rehns_
                                     Kenneth M. Rehns
                                     Florida Bar No. 1003357

Ronald S. Nisonson
Florida Bar No. 079405
**WARD DAMON POSNER**
**PHETERSON & BLEAU**
4420 Beacon Circle
West Palm Beach, Florida 33407-3281
Telephone:  (561) 842-3000
Facsimile:  (561) 842-3626
Email:  krehns@warddamon.com
          rnisonson@warddamon.com

Bryan A. Merryman (*pro hac vice forthcoming*)
J. Jonathan Hawk (*pro hac vice forthcoming*)
**WHITE & CASE LLP**
555 S. Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329
Email:  bmerryman@whitecase.com
          jhawk@whitecase.com

*Attorneys for Defendant Public Reputation*
*Management Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 3, 2020, I electronically filed the foregoing by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record for the parties.

*/s/ Kenneth M. Rehns*
**Kenneth M. Rehns, Esq.**