IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **ROBERT AUSTIN AND JESANIEL MARRERO,** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**PUBLIC REPUTATION MANAGEMENT SERVICES, LLC D/B/A PR.BUSINESS,** a Florida limited liability company,<br><br>*Defendant.* | Case No. 9:20-cv-80161-RS<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY, TRANSFER, OR DISMISS ACTION**

The Court should deny Defendant PR.Business's motion in total.

The first to file rule does not apply because the parties and issues in this action and the *Murphy* action are not the same. This case involves two different types of TCPA claims, one for making prerecorded voice calls and another for making calls to Do Not Call registry registered phone numbers, each with its own distinct class. The *Murphy* case involves only one of the claims asserted in this action (for making prerecorded voice calls), and in *Murphy* it is being asserted on behalf of a narrower class of consumers than in this action (*i.e.*, in *Murphy* the proposed class excludes residential landline subscribers). Given this minimal overlap, a stay based on the first to file rule or *Landis* would prejudice Plaintiffs and other consumers who are excluded from the narrow class with a single clam in *Murphy* by needlessly delaying them from pursuing prerecorded voice and/or Do Not Call registry based TCPA claims.

A transfer based on the pendency of *Murphy* would also be inappropriate because, in addition to the limited overlap between this action and *Murphy*, none of the transfer factors under

28 U.S.C. § 1404(a) support a transfer of this action to the Easter District of Pennsylvania. Plaintiffs have chosen to file this action in this district where Defendant is headquartered and from where Defendant directed its TCPA violative conduct. As a result, nearly every factor supports denying Defendant's demand to transfer the action, including: (1) the convenience of the witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the weight accorded a plaintiff's choice of forum, and (8) trial efficiency and the interests of justice, based on the totality of the circumstances.

There is also no justification for staying this action pending the Supreme Court's ruling in *Barr v. American Association of Political Consultants, Inc.* regarding the constitutionality of the TCPA exception for calls made to collect U.S. government backed debts or staying, or dismissing this action pending the FCC's determination of what constitutes an autodialer. First, the Supreme Court's and FCC's decisions are unlikely to have any bearing on this case which does not involve debt collection calls or a claim under the TCPA's autodialer provision, making a stay inefficient and contrary to judicial economy. Second, being required to defend this suit, without more, does not constitute a clear case of hardship or inequity to Defendant absent a stay. Third, Plaintiffs and the putative classes will be prejudiced in the event of a stay because the delay will create the risk of loss of relevant evidence and complicating class-wide notice. And fourth, dismissal of Plaintiff Austin's claims based on the primary jurisdiction doctrine would be particularly prejudicial because Plaintiff Austin has previously voluntarily dismissed claims against Defendant, and therefore any dismissal in this action would be a dismissal with prejudice.

The Court should therefore deny Defendant's motion in all respects.

## BACKGROUND FACTS

On February 4, 2020, Plaintiffs filed this action against Defendant arising from multiple, unsolicited, prerecorded voice, telemarketing calls each received from Defendant. [D.E. 1]. Plaintiff Austin received Defendant's calls on his non-residential cell phone number.[1] Plaintiff Marrero received Defendant's calls on his residential cell phone number (*i.e.*, which he uses for household purposes), which was registered on the national Do Not Call registry. The original complaint included two counts and was brought on behalf of Plaintiffs individually and the following two classes:

> Robocall Class:   All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular or residential landline telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.
>
> National Do Not Call Registry Class:   All persons in the United States to whom:  (a) Defendant and/or any person or entity acting on Defendant's behalf initiated more than one telephone solicitation call; (b) promoting Defendant's goods or services; (c) in a 12-month period; (d) on their residential telephone line, including on a cellular telephone; (e) whose residential telephone number had been on the National Do-Not-Call registry for at least 31 days; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

Notwithstanding, to clarify the claims in light of Defendant's responsive pleading that made arguments directed towards a claim under the TCPA's autodialer provision, Plaintiffs amended their complaint to eliminate references that would be relevant exclusively to a claim under the

---

[1] On December 3, 2019, Plaintiff Austin first filed an action against Defendant in the Western District of Arkansas, where he resides.  However, in order to add Plaintiff Marrero to the action and avoid a dispute over whether the Western District of Arkansas would have personal jurisdiction over Defendant as to Plaintiff Marrero's claims, Plaintiffs Austin dismissed the Western District of Arkansas action without prejudice in order to refile his claim in this District where Defendant resides.

TCPA's autodialer provision, and not to a claim under the TCPA's prerecorded voice provision, but otherwise left the complaint unchanged including the class definitions.[2]  [D.E. 13].

In contrast to Plaintiffs' claims and proposed classes, the *Murphy* action, which was filed only six weeks before Plaintiff Austin first filed against Defendant, includes a single claim asserting a violation of the TCPA's prerecorded voice and/or autodialer provisions.  That claim is asserted only on behalf of a class of consumers that received calls from Defendant on their cell phone numbers, and does not include consumers who were called by Defendant at their residential landlines.  Although the *Murphy* complaint includes three allegations concerning the Do Not Call registry and Do Not Call provision based TCPA claims in its introductory "Background of the TCPA" section (*see Murphy* complaint at ¶¶ 4, 19-20), the plaintiff in *Murphy* does not allege that his cell phone number is used for residential purposes, and, more important, has not asserted a Do Not Call registry based TCPA claim.

## ARGUMENT

### A.  The First-To-File Rule Does Not Apply Because the Parties and Issues in this Action and the Murphy case are not the same

The first-to-file rule does not apply because Plaintiffs in this action and the plaintiff in *Murphy* are litigating different claims on behalf of different classes.  In the context of class-

---

[2] Defendant latches onto the one inadvertent remaining reference to the term "automatic telephone dialing system" in the amended complaint's prayer for relief to argue that the case should be stayed or dismissed pending the FCC's ruling as to what constitutes an autodialer. However, as Plaintiffs made clear to Defendant during the parties' meet and confer concerning Defendant's pending motion, Plaintiffs' prerecorded voice and Do Not Call provision based claims do not require the Court to resolve whether Defendant used an autodialer, and Plaintiffs do not intend to seek to enjoin Defendant's use of an autodialer through this action.  In contrast, because the sole claim in *Murphy* is based in part on the TCPA's autodialer provision, unlike this action, the *Murphy* case *is* susceptible to a stay or dismissal pending the FCC's determination as to what constitutes an autodialer.

action lawsuits, the relevant question is whether the proposed classes are similar. *See Peterson v. Aaron's, Inc.*, 2015 WL 224750, at *2 (N.D. Ga. Jan. 15, 2015) ("[C]ourts routinely look to the similarities of the *proposed* classes . . .") (emphasis in original).[3]

Here, there is insufficient overlap between Plaintiffs' proposed classes and the narrow class in the *Murphy* action. The *Murphy* action proposes a *narrow* subset of only one of the classes proposed here. While Plaintiffs received prerecorded voice calls from Defendant, Plaintiffs are also pursuing classwide claims based on a practice wholly absent from *Murphy*: calls to consumers Do Not Call Registry registered phone numbers. Although there does not appear to be an express deadline to amend the complaint in *Murphy*, given that the plaintiff alleges to have received multiple calls before filing the complaint and that his number was Do Not Call registry registered at the time, but did not assert a Do Not Call provision based claim, it appears unlikely that the *Murphy* case will at some future point expand to include all of the claims and putative class members included in this action. *But see Peterson*, 2015 WL 224750, at *2.

Where, as here, the first filed class would necessarily exclude members of the second-filed class, courts have found insufficient overlap between the parties. *See, e.g.*, *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 975 (N.D. Cal. 2019) (finding partial, but insufficient overlap between the putative classes). None of the cases Defendant cites involving the transfer of a second filed putative class action stand for a different proposition. *See, e.g., Cole v. United Healthcare Ins. Co.*, No. 19-cv-21258-GAYLES, 2019 U.S. Dist. LEXIS 187358, at *7 (S.D.

---

[3] The fact that Defendant is a named party in both actions is not dispositive to the analysis. *See, e.g.*, *Peter Brasseler Holdings, L.P. v. Gebr. Brasseler GmbH & Co. KG*, 2007 WL 1500296, at *3 (S.D. Ga. May 21, 2007) (noting that defendants were parties in both actions, but declining to transfer case to first-filed forum).

Fla. Oct. 28, 2019) ("If the Original Action's broad putative class is certified, Plaintiff's proposed narrower class would be subsumed."); *Glasgo v. Uber Techs., Inc.*, No. 8:19-cv-97-T-33AAS, 2019 U.S. Dist. LEXIS 78005, at *4 (M.D. Fla. May 3, 2019) ("the entire class Glasgo purports to represent in this case is subsumed within the putative class in [the first filed action]"); *Jeffrey v. Cap. One Bank (USA), N.A.*, No. CV416-218, 2016 U.S. Dist. LEXIS 141141, at *1-2 (S.D. Ga. Oct. 11, 2016) ("Plaintiff has alleged a putative national class action against Defendant for violating the Telephone Consumer Protection Act by calling individuals on their cellular telephone with an autodialer after those individuals had revoked their consent. … [The first filed] case involves plaintiffs residing in Georgia and Missouri who claim that Defendant called their cell phones with an autodialer after they had revoked consent.").

 Moreover, the issues in this case are dissimilar from those in *Murphy*.  The fact that Plaintiff Marrero's cell phone number was Do Not Call registry registered and that it was residential is distinct from the Murphy action, which does not involve a Do Not Call provision based claim.  Courts have employed a 'transaction or occurrence' analysis, similar to that applied in Federal Rule of Civil Procedure 13 analyses, to determine overlap of the issues.  *See e.g.*, *Dial HD, Inc. v. Clearone Communs., Inc.*, No. CV 109-100, 2010 U.S. Dist. LEXIS 93333 (S.D. Ga. Sep. 7, 2010) (finding insufficient overlap to related cases); *Peter Brasseler Holdings, L.P. v. Gebr. Brasseler GmbH & Co. KG, Kobra, Inc.*, No. 407CV025, 2007 U.S. Dist. LEXIS 36915 (S.D. Ga. May 21, 2007) (applying the transaction or occurrence analysis and finding insufficient overlap where both actions involved the *same* parties, and similar trademark claims).  Here, there is not substantial overlap because this action challenges calls to persons on the Do Not Call registry, that arise from a "different transaction or occurrence" than the issues in the *Murphy* action. *Id.*

Indeed, in circumstances such as this, the United States Judicial Panel on Multidistrict Litigation (JPML) frequently denies consolidation of TCPA actions due to insufficient overlap between the issues. *See In re Lifewatch, Inc., TCPA Litig.*, 140 F. Supp. 3d 1342 (J.P.M.L. 2015) (denying consolidation); *In re: Caribbean Cruise Line, Inc., TCPA Litig.*, 89 F. Supp. 3d 1356 (J.P.M.L. Feb. 6, 2015) ("[T]he cases are already being managed in an orderly and efficient manner, and the issues presented are not unusually complex."). Dealing with substantially identical facts, the JPML recently found that the issues *did not overlap* when "two actions allege [Defendant] sent text messages, while two actions alleged [Defendant] made telephone calls using an autodialer . . . [and] one action alleges violations of the 'Do-Not-Call' registry." *In re: Holiday Cruise Line TCPA Litig.*, 118 F. Supp. 3d 1377 (J.P.M.L. Aug. 7, 2015).

This situation is on all fours with the JPML's *Holiday Cruise Line* decision. Here, Plaintiffs allege a violation of the TCPA covering the Do Not Call registry, while the *Murphy* action does not. There is "not sufficient factual overlap among these actions" justifying the first-to-file rule. *Id.*

And under Rule 23, the predominating common questions in this case are substantially different from those in the *Murphy* action. First, to the extent that Defendant lacked any form of consent to make calls to the plaintiff in *Murphy*, the court in that case will not have a basis to determine whether Defendants' calls constitute telemarketing. *See* 47 C.F.R. §§ 64.1200 (a)(2)(-(3) (distinguishing between consent requirements). Whether Defendant's calls constitute telemarketing, however, is a critical inquiry for Plaintiff Marrero's and the putative class's Do Not Call provision based claim. *Id.* at § (c)(2) (prohibit telemarketing calls to Do Not Call registry registered numbers). Second, because the plaintiff in *Murphy* does not allege that the cell phone number he received the calls at was a residential number and has not asserted a Do

7

Not Call based claim that requires such a determination, the court in that case will not be required to determine the bright line between a residential phone number and a non-residential phone number, which is a critical determination for Plaintiff Marrero's and the class's Do Not Call registry claims, and also for the prerecorded voice claims of residential landline subscribers who are excluded from the more narrow proposed class in *Murphy*.

In effect, Defendant's argument as to the overlap between this action and the *Murphy* case would lead to the absurd outcome that *every* TCPA action alleging a violation from making telephone calls would overlap. Ultimately, Plaintiffs in this case allege violations and issues with underlying facts that are not present in the *Murphy* action, and the *Murphy* action would not adequately represent the issues in this case. Thus, the issues do not overlap.

And in the absence of overlapping parties and issues in this action and *Murphy*, the first to file rule does not apply, and the Plaintiffs and putative class members in this action would therefore be prejudiced by an indefinite stay related delay.

**B.     Staying or Transferring this Action based on the pendency of *Murphy* would be Contrary to the Interests of Justice**

The first-to-file rule is to be applied only "in the broader context of the ends of justice." *Moss & Assocs., LLC v. E Light Elec. Servs., Inc.*, 2016 WL 4578144, at *3 (N.D. Ga. Sep. 2, 2016). Accordingly, "the first-filed rule should not be mechanically applied" and "it would be appropriate to depart from the general rule if there is a showing that the balance of convenience tips in favor of the second forum or that there are special circumstances which justify giving priority to the second action." *Lockheed Martin Corp. v. L-3 Comms. Corp.*, 405 F. Supp. 2d 1381, 1383 (N.D. Ga. 2005). This case illustrates the precise reasons why the rule should here not be mechanically applied. Defendant urges two options: transfer or stay. Neither one would permit the classes to vindicate their rights. Rather, both alternatives would severely prejudice

Plaintiffs, and leave them without a forum to bring many of their claims.[4]

### 1. A stay would prejudice Plaintiffs and the Proposed Classes

Defendant's suggestion that this case be stayed would result in prejudice and harm to Plaintiffs and the proposed classes.

First, a stay would be inappropriate because Plaintiff's claims challenging Defendant's prerecorded voice calls to residential landline subscribers and calls to persons on the Do Not Call registry have nothing to do with the *Murphy* action.

Second, although filed first, the *Murphy* case is still at an early stage, and thus Plaintiffs may be forced to wait for some unknown length of time for their claims to be adjudicated (if at all), risking the loss of critical evidence, complicating class notice, and otherwise delaying or preventing Plaintiffs and the putative classes' members from obtaining justice. *Young v. Peraza*, No. 1560968CIVCOHNSELTZE, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) ("when discovery is delayed or prolonged it can create case management problems which impede the [c]ourt's responsibility to expedite discovery and cause unnecessary litigation expenses and problems."); *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) ("plaintiffs have a strong interest in being fully compensated for their losses as soon as possible, and therefore, a stay is not appropriate"); *United States v. Swissco Properties within S. Dist.*, 821 F. Supp. 1472, 1475

---

[4] Defendant is attempting to gain some litigation advantage at the expense of Plaintiffs and the alleged class. For example, Defendant is aware that the alleged class scope in *Murphy* is far narrower, and thus Defendant may stand to lose far less should it be found liable. More troublesome is that Defendant's motion will inadvertently allow it to handpick the lead Plaintiff in a class action against it.

(S.D. Fla. 1993) ("justice delayed is justice denied").

### 2. Analysis of the transfer factors weighs against a transfer

In this Circuit, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996); *see also Lockheed Martin Corp. v. L-3 Communs. Corp.*, 405 F. Supp. 2d 1381, 1383 (N.D. Ga. 2005).

This Court has applied the factor analysis of a transfer request under 28 U.S.C. §1404(a) in the context of the first-to-file rule. "[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

The Eleventh Circuit looks the following factors: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Eight of these factors weigh strongly against a transfer in this case, and the ninth is neutral.

First, nearly all of the witnesses Plaintiffs expect to call in this case would be Defendant's corporate officers and employees, all of whom are likely to be subject to process in Florida. *See Spinevision, Inc. v. Burel*, 2006 WL 3531723, at *4 (N.D. Ga. Dec. 5, 2006) (fact that witnesses would be located in forum weighed against transfer). Plaintiffs do not expect to call *any witness* who resides in Pennsylvania, other than Plaintiff Marrero, who has chosen to litigate in this

forum and subject himself to this Court's jurisdiction.

Second, all of the documents and sources of proof are within Defendant's possession, at its corporate headquarters in this district. *See id.* (fact that party's "employment documents, including those relating to its allegations" were in forum weighed against transfer).

Third, Defendant is headquartered in this Court's district, and it would be far easier and economical for Plaintiffs who have engaged Florida counsel to litigate in Florida, as opposed to Pennsylvania. *See Spinevision, Inc. v. Burel*, 2006 WL 3531723, at *4 (N.D. Ga. Dec. 5, 2006) (fact that one party was headquartered in forum weighed against transferring outside that forum). Indeed, as alleged in the *Murphy* complaint, the only contact between Defendant and Pennsylvania is that it does business there, and the only witness in Pennsylvania is likely to be Plaintiff Marrero who has chosen to file suit here.

Fourth, the operative facts—Defendant's telemarketing practices and the calls made to Plaintiffs and the proposed Classes—all were devised and directed from Florida.

As such, (1) the convenience of the witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, and (7) the weight accorded a plaintiff's choice of forum all support denial of Defendant's transfer request. So to does the (8) trial efficiency and the interests of justice, based on the totality of the circumstances, factor. *See* National Judicial Caseload Profile, available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf (last accessed Apr. 17, 2020) (establishing that (1) on a per judgeship basis, Eastern District of Pennsylvania judges have more cases than Southern District of Florida judges, (2) the average

disposition time for a motion in the Eastern District of Pennsylvania is significantly slower than in the Southern District of Florida, and (3) the number of civil cases over three years old is nearly ten times higher in the Eastern District of Pennsylvania than in the Southern District of Florida). And the remaining factor, a forum's familiarity with the governing law, is likely neutral as both forums have experience with the TCPA, a federal statute.

Defendant has not established that a stay or transfer based on the pendency of *Murphy* is proper in this case. And to the contrary, Plaintiffs have shown that significant prejudice and harm would result from such a stay and that the relevant transfer factors disfavor a transfer.

### C. Staying or Transferring this Action based on the pendency of *Barr* would be Inefficient and would Not Promote Judicial Economy

This case arises from Defendant's unauthorized calls to Plaintiffs and the putative classes. As the Eastern District Court of Virginia explained recently in denying a defendant's demand for a stay in a case like this one, arising from TCPA violations unrelated to the collection of a government backed debt, "the primary issue before the Supreme Court in *Barr*, namely whether the government-debt exception to the TCPA is constitutional, is not applicable in this action." *Sutor v. Amerigroup Corp.*, No. 19-cv-1602, *slip op*. [D.E. 20] (attached as Exhibit 1) at p. 2. "[T]he only reason *Barr* would have any bearing on this case is if the Supreme Court both finds the government-debt exception unconstitutional, and decides, contrary to the holdings of the two court of appeals to this issue that the appropriate remedy is the extreme measure of striking down the entire statute." *Id*. at p.2 & n.1 (citing *Am Ass'n of Political Consultants, Inc. v FCC*, 923 F.3d 159, 170-71 (4th Cir. 2019) and *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156-57 (9th Cir. 2019)). Accordingly, as in *Sutor*, "[s]taying this action for months based on this possibility is inefficient and does not promote judicial economy." *Id*. at p. 2.

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citations omitted). The proponent "must make out a clear case of hardship or inequity in being required to go forward[.]" *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Defendant has not met that burden here, and, in fact, fails to set forth any hardship or inequity that it will suffer if the case goes forward, much less "a clear case." *Compare* Motion at p. 12 (identifying the need to defend the action as the sole bases for requesting a stay) *with Izor v. Abacus Data Sys.*, No. 19-cv-01057-HSG, 2020 U.S. Dist. LEXIS 64454, at *2-3 (N.D. Cal. Apr. 13, 2020) ("Under *Landis*, the Court declines to exercise its discretion to stay the case pending the Supreme Court's decision in *Barr*. … The Court similarly finds little hardship or inequity will result if the case moves forward. While Defendant argues that it 'will suffer harm in the form of potentially unnecessary fees and costs spent litigating a class action that may be mooted shortly,' Dkt. No. 51 at 12, 'being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*.' *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). Moreover, Defendant fails to acknowledge that a second cause of action alleged by Plaintiffs under section 227(c)(5) will be completely unaffected by the outcome in *Barr*.").

Notwithstanding, a stay risks the loss of relevant evidence necessary to vindicate Plaintiffs' and the putative classes' rights. *Sutor*, No. 19-cv-1602, *slip op*. [D.E. 20] at p. 3 ("a prolonged stay can make discovery unnecessarily difficult"). Additionally, a stay needlessly delays Plaintiffs' and putative class members' potential recovery, which in turn, creates the risk that class members will be harder to reach and, as a result, will be denied any monetary recovery if Plaintiff ultimately prevails on behalf of the classes. *D.C. v. Cty. of San Diego*, No. 15-cv-1868, 2017 U.S. Dist. LEXIS 57736, at *12 (S.D. Cal. Apr. 14, 2017) ("Plaintiff argues that the

contact information for putative class members continues to become outdated with time, indicating that there is a risk that putative class members might not receive notice if a class is eventually certified. This could potentially result in denial of monetary recovery to those class members, as opposed to only delay.").

Accordingly, a stay will prejudice Plaintiffs and putative class members, and the Court should therefore deny Defendant's request to stay pending a ruling in *Barr*.

### D. Staying or Dismissing this Action pending a ruling from the FCC regarding What Constitutes an Autodialer is also Inappropriate

As explained above, this case does not assert a claim for violation the TCPA's autodialer provision, does not seek to enjoin Defendant's use of an autodialer, and does not otherwise require the Court to determine whether Defendant used an autodialer. Therefore, there is no basis for staying this action pending a ruling from the FCC regarding what constitutes an autodialer.

### CONCLUSION

Based on the foregoing, the Court should deny Defendants' motion to stay, transfer, or dismiss this action based on a ruling in *Murphy* or *Barr* or by the FCC regarding what constitutes an autodialer.

|  | **Robert Austin** and **Jesaniel Marrero**, individually and on behalf of those similarly situated individuals |
|---|---|
| Dated: April 17, 2020 | */s/ Avi Kaufman* <br> Avi R. Kaufman (FL Bar no. 84382) <br> kaufman@kaufmanpa.com <br> Rachel E. Kaufman (FL Bar no. 87406) <br> rachel@kaufmanpa.com <br> KAUFMAN P.A. <br> 400 NW 26th Street <br> Miami, FL 33127 <br> Telephone: (305) 469-5881 |
|  | *Counsel for Plaintiffs and the putative classes* |